UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BORIS KHAIT,

                    Petitioner,                          Case No. 1:26-cv-1875

v.                                                       Honorable Robert J. Jonker

KEVIN RAYCRAFT et al.,

                    Respondents.
_____/

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently

detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated

this action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

(Pet., ECF No. 1.) For the following reasons, the Court will conditionally grant Petitioner's petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## **Discussion**

### I.    **Procedural History**

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention

and asks the Court to, *inter alia*, assume jurisdiction over this matter and issue a writ of habeas

corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1,

PageID.7.)

In an order entered on June 19, 2026, the Court directed Respondents to show cause, within

three business days, why the writ of habeas corpus and other relief requested by Petitioner should

not be granted. (Order, ECF No. 4.) Respondents filed their response on June 24, 2026, (ECF No. 5), and Petitioner filed his reply on July 6, 2026, (ECF No. 8.)

## II.    Factual Background

Petitioner is a native and citizen of Belarus. (Notice to Appear (NTA) ECF No. 5-1, PageID.57.) He entered the United States as a Refugee in November 1995. (Pet., ECF No. 1, PageID.6; Additional Charges of Inadmissibility (Addt'l Chgs), ECF No. 5-5, PageID.78.) Petitioner did not apply for adjusted status and left the United States at an unknown date and time. (Addt'l Chgs, ECF No. 5-5, PageID.78.)

Petitioner and his family entered the United States at the Otay Mesa Port of Entry on April 29, 2023. (Form I-213, ECF No. 5-2, PageID.66.) The Department of Homeland Security (DHS) issued Petitioner an NTA, which charged him under 8 C.F.R. § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner is an immigrant "who, at the time of application for admission, is not in possession of a valid unexpired [immigration or travel document]." (NTA, ECF No. 5-1, PageID.58–61.) DHS then paroled Petitioner into the United States pursuant to 8 C.F.R. § 212(d)(5) of the INA until April 27, 2024. (Form I-213, ECF No. 5-2, PageID.66.; Form I-94, ECF No. 5-3, PageID.70.)

Petitioner filed an I-589 Application for Asylum and for Withholding of Removal with the Detroit Immigration Court on August 16, 2024. (Form I-213, ECF No. 5-2, PageID.66.) On March 4, 2025, he filed an I-485 Application to Register Permanent Residence or Adjust Status with the United States Citizenship and Immigration Services (USCIS). (*Id.*)

On September 4, 2025, DHS arrested Petitioner and placed him into removal proceedings. (*Id.*, PageID.67; Warrant for Arrest of Alien, ECF No. 5-4, PageID.72.) On February 24, 2026, the Detroit Immigration Court held that Petitioner was inadmissible pursuant to 8 C.F.R. § 212(a)(7)(A)(i)(I) of the INA and ordered him removed to Belarus. (Order Immigration Judge,

2

ECF No. 5-6, PageID.82–84.) The Immigration Court also denied Petitioner's Application for

Asylum and Withholding of Removal. (*Id.*, PageID.82–83.) On March 27, 2026, Petitioner filed

an appeal with the Board of Immigration Appeals (BIA), and his appeal remains pending. (BIA

Briefing Notice, ECF No. 5-7, PageID.87; Resp., ECF No. 5, PageID.51.) Because Petitioner's

appeal to the BIA remains pending, Petitioner's order of removal is not "administratively final"

for purposes of the INA.[1] *See* 8 U.S.C. §§ 1101(a)(47)(B), 1231(a)(1)(B)(i), 1231(a)(2)(A).

Respondents have not provided Petitioner an individualized bond hearing before an

immigration judge as contemplated by 8 U.S.C. § 1226(a).[2]

## III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual

detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers upon the federal courts the power to issue

writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of

---

[1] Section 1231 of Title 8, titled, "Detention and removal of aliens ordered removed," provides in relevant part that, "[d]uring the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). However, as relevant to this case, the removal period does not begin to run until "[t]he date the order of removal becomes administratively final." *Id.* § 1231(a)(1)(B)(i). For the purposes of § 1231(a)(1)(B)(i), a removal order "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." *Id.* § 1101(a)(47)(B); *see Jusufi v. Chertoff*, No. 07-15450, 2007 WL 4591760, at *4 (E.D. Mich. Dec. 28, 2007) (discussing that a final removal order becomes administratively final when the BIA denies an appeal of it); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 534–35 (2021) ("[O]nce the BIA has reviewed [and affirmed] the [removal] order (or the time for seeking the BIA's review has expired), DHS is free to remove the alien *unless* a court issues a stay. That reinforces why Congress included 'administratively' before the word 'final' in the first provision."). Because Petitioner's appeal to the BIA remains pending, § 1231 does not apply, and § 1226(a) governs Petitioner's detention. *See Johnson*, 594 U.S. at 533 ("The parties agree that § 1226 governs the detention of aliens until § 1231's 'removal period' begins.").

[2] The materials submitted by the parties do not suggest that Petitioner is subject to a final order of removal or that Petitioner is subject to detention under 8 U.S.C. § 1226(c).

3

the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

IV.     **Merits Discussion**

A.     **Statutory Basis for Petitioner's Detention**

Based on the facts presented by the parties, and the reasoning of the Sixth Circuit Court of Appeals in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026), the Court concludes that § 1226(a), not § 1225(b)(2)(A), governs Petitioner's detention.

B.     **Fifth Amendment Due Process Considerations**

The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Lopez-Campos*, the Sixth Circuit Court of Appeals explained:

> Noncitizens who have "passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903). Thus, noncitizens within the interior of the United States are entitled to the protections of the Due Process Clause, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993*); see also Demore v. Kim*, 538 U.S. 510, 523 (2003). Consequently, the government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here." *Yamataya*, 189 U.S. at 100–01.

*Lopez-Campos*, 175 F.4th at 732. The Sixth Circuit therefore upheld the lower courts' determinations the government's detention of the *Lopez-Campos* petitioners "without bond under § 1226(a) was a deprivation of liberty that violated [their] due process rights." *Id*., at 734.

Petitioner is likewise detained under § 1226(a) and has been denied an individualized bond hearing. Therefore, the Court concludes that Petitioner's current detention under the mandatory

4

detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights. *See id.*; *see also Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *6–8 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *7–8 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *7–9 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *6–8 (W.D. Mich. Dec. 12, 2025).

**V.      Other Claims and Other Forms of Relief**

Because the Court will conditionally grant Petitioner's § 2241 petition as set forth herein, the Court does not address the other claims and other requested relief in Petitioner's § 2241 petition.

**<u>Conclusion</u>**

For the reasons discussed above, the Court will enter a judgment conditionally granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment with notice to the Parties as soon as practicable, no later than 24 hours prior to the scheduled hearing, or, in the alternative, immediately release Petitioner from custody.[3] The Court will also order Respondents to file a status report within six business days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. The status report shall include if

---

[3] This Court has adopted a standard practice of requiring such a hearing within five business days, even if the Petitioner requests a deadline that is shorter or longer or only release.

5

and when the bond hearing occurred, if bond was granted or denied, and if bond was granted, the conditions of the bond, or if bond was denied, the reasons for the denial.


Dated:    July 14, 2026                          /s/ Robert J. Jonker
                                                 Robert J. Jonker
                                                 United States District Judge